## John Henry, Appellee, v. Charles Britt, Appellant.
### (Not to be reported in full.)

Appeal from the Circuit Court of Pulaski county; the Hon.
A. W. LEWIS, Judge, presiding. Heard in this court at the March
term, 1915. Reversed and remanded with directions. Opinion
filed December 1, 1915.

## Statement of the Case.

Bill by John Henry, complainant, against Charles
Britt, defendant, in the Circuit Court of Pulaski coun-
ty, to compel defendant to convey to complainant cer-
tain premises pursuant to a verbal contract between
one Grant Britt, deceased, father of defendant,
and complainant. From a decree granting the relief
prayed, defendant appeals.

At the hearing defendant disputed only whether com-
plainant had repaid the advances made to him by
Grant Britt, and whether the verbal agreement be-
tween complainant and Grant Britt was within the
Statute of Frauds.

The bill alleged that on August 1, 1904, J. B. Mathis,
the owner of the Southwest Quarter of the Southeast
Quarter of Section 29, in Township 14 South, Range
1 West of the Third Principal Meridian, in Pulaski
County, made and delivered to the complainant
a bond, also signed by his wife, Nellie I. Mathis,
conditioned for the conveyance of the described
tract of land to the complainant for the sum of
$850, payable $175 cash in hand, and the remainder
in annual payments of $135 cash, with interest at seven
per cent. Complainant made the cash payment and
took possession and has ever since been in possession.
On May 1, 1905, J. B. Mathis and wife executed a quit-
claim deed of the premises to A. W. Brown, subject
to the conditions of the bond, which were assumed by

Brown. In the year 1906, the complainant made an agreement with Grant Britt, by which Britt agreed to pay to Brown the amount remaining due and unpaid by the terms of the bond, and upon complainant repaying the amount so paid, to convey the premises to the complainant. In pursuance of said agreement, the complainant assigned to Grant Britt the bond for a deed. On October 25, 1906, Brown died, and afterwards the defendant Margaret A. Brown was appointed executrix of his will. On December 14, 1906, Grant Britt died, leaving the defendant Charles Britt, a minor, his son and only heir at law. On October 15, 1907, Margaret A. Brown, as executrix, conveyed the premises to Charles Britt. On October 19, 1908, H. M. Britt was appointed guardian of Charles Britt. The complainant paid to H. M. Britt, as guardian, the remainder of the purchase money due. When the bill was filed the defendant Burton Bagby was guardian of Charles Britt, and the complainant had demanded the execution of a deed, which was refused. The defendant Margaret A. Brown, executrix, by her answer admitted the making of the conveyance to A. W. Brown, subject to the bond for a deed, his death, and the conveyance by her, as executrix, to Charles Britt. The defendants Charles Britt and Burton Bagby, his guardian, answered that they were not informed as to the alleged purchase by the complainant from J. B. Mathis, or the payment of $175, or of the deed from Mathis and wife to Brown. They did not deny the averments of the bill respecting the agreement between the complainant and Grant Britt, and made no answer to such averments, but denied that complainant had performed or had paid any sum to either of them, or on behalf of either of them, on the purchase price of the land, or that he had paid any taxes or assessments. They alleged that the only thing that the complainant ever gave them was a few loads of corn paid as rent, and they invoked the Statute of Frauds and Perjuries

as against the agreement between the complainant and Grant Britt.

Complainant testified:

"I paid $300 to H. M. Britt. I paid him $300. Every dollar is here on this stick (presenting stick) every notch on this stick is $1.00.

Q. Where did you get that money?

A. I raised strawberries, peas and beans and shipped them.

Q. Did you pay him $300 at one time?

A. No, sir. Every time I paid him $10 I would cut ten notches on this stick. Every notch here is a dollar.

Q. When did you put these notches there?

A. Every time I made a payment."

It was sought to corroborate the testimony of complainant with reference to this payment by his sons, Fred Henry and John Henry, Jr., and his daughter Margaret Henry. Fred Henry testified that he gave his father $110, and that his sister Margaret gave her father $170, and that their father had $20, making in all $300, and that he took this $300 and paid it to H. M. Britt on the land. The testimony of Margaret was practically to the same effect. However, neither of them testified at being present and seeing the money paid to Britt, but simply that they gave their father the money and that he was going to make the payment to Britt, and that he brought back with him a slip of paper which they called a receipt. This paper was in words and figures as follows: "John Henry to H. M. Britt, $300.00." John Henry, Jr., who was fourteen years old when he testified, said that he was with his father when his father delivered some money to H. M. Britt, and he saw them pour the money out on the table and count it, but he did not know how much there was, or for what purpose it was delivered to Britt. Witness was ten years of age at the time the money was alleged to have been paid.

It also appeared that at the time of the death of Grant Britt, complainant was largely indebted to Britt

for different sums of money secured by chattel mortgages, which mortgages came to the possession of H. M. Britt, as administrator of the Grant Britt estate; that they had various transactions with reference to these chattel mortgages, the same being from time to time renewed, and, in fact, the evidence showed that at least one of them was still unpaid.

Complainant on his cross-examination with reference to these chattel mortgages was asked these questions: "Q. Was it after Grant Britt's death you made this chattel mortgage? Do you remember being before Mr. Curt to take the acknowledgment, do you remember that? A. He told me at that time that I did not owe but $300.00."

H. M. Britt, administrator of the estate of Grant Britt, deceased, and for a time guardian of Charles Britt, testified in effect that at no time, after the death of Grant Britt, did complainant make him any payments of any kind whatever on this bond for a deed. Charles Britt testified that at no time did complainant pay him anything on said land.

The chancellor found the facts to be as alleged in the bill and that defendant had attained his majority. The chancellor then stated an account charging complainant with principal, interest and taxes in the sum of $1,099.90, and credits him as follows: Amount paid to Grant Britt $181; interest on same, seven per cent. from date of payment to date of decree, $76.02; and with $300 paid to H. M. Britt, guardian of Charles Britt, with interest on the same from the date of payment to wit: May 30, 1909, to the date of the decree, $93; and also credited him with forty-three loads of corn at eighteen bushels per load, at fifty cents per bushel, $387; with interest on same, $27.09, making a total credit of $1,064.11, leaving a balance owing by appellee to appellant of $35.79.

The chancellor then decreed that on payment of such balance defendant should execute and deliver a deed of

the premises to complainant, or in default of such conveyance a special master in· chancery, appointed for the purpose, should execute the deed in defendant's behalf.

C. S. MILLER and L. M. BRADLEY, for appellant.

CHARLES L. RICE, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

## Abstract of the Decision.

1. MORTGAGES, § 12*—*when assigned bond for deed constitutes mortgage.* An assignment of a bond for a deed to land on the understanding that the assignee shall take the deed and hold the same as security for the repayment by assignor of advances of money to pay the amount due on the bond and the amount of taxes to be paid by the assignee amounts to a mortgage, and the deed so taken will stand as security for the money so advanced.

2. MORTGAGES, § 716*—*when bill to compel conveyance of land bill to redeem.* Where the evidence shows that defendant's prede-· cessor in title to land took title under a verbal agreement to convey to complainant on payment of certain sums of money, a bill to compel such a conveyance is a bill to redeem and not a bill for specific performance.

3. FRAUD, STATUTE OF, § 28*—*when inapplicable to verbal agreement to convey land.* The Statute of Frauds has no application to a case where one takes title to land under verbal agreement to convey to another on payment of certain sums of money, such transaction being a mortgage, and not an agreement for the sale of land.

4. MORTGAGES, § 720*—*when oral testimony of agreement to reconvey land admissible.* In a bill to compel conveyance of land, alleging that the predecessor of defendant in title to certain land took title on a verbal agreement to convey to complainant on payment of certain sums of money, oral testimony of the agreement to reconvey is competent.

5. MORTGAGES, § 12*—*when evidence sufficient to sustain finding that bond for deed assigned as security for money advanced.* In a bill to compel the conveyance of land alleging that complainant, having a bond for a deed of the land in question, assigned the bond

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to defendant's predecessor in title thereto under a verbal agreement that such predecessor would advance the sums due on the bond, and the sums necessary to pay the taxes on the land, and would convey to complainant on payment of the sums so advanced, evidence *held* to sustain a finding that complainant assigned his bond to such predecessor as security for the money advanced.

6. APPEAL AND ERROR, § 1410*—*when finding set aside on appeal.* A finding will be set aside on appeal where it is against the manifest weight of the evidence.

7. MORTGAGES, § 720*—*when evidence insufficient. to sustain decree stating an account.* In a bill to compel the conveyance of land, where it appeared that defendant's predecessor in title to the land took title under an agreement to convey to complainant, on payment of certain sums of money, a decree stating an account showing the amount due from complainant and the amount paid by him, *held* sustained by the evidence except as to one item.

8. PAYMENT, § 29*—*when evidence insufficient to establish payment.* In a bill to compel the conveyance of land, where it appeared that defendant's predecessor in title to the land took title under an agreement to convey to complainant, on payment of certain sums, a decree allowing in its statement of account a payment of $300 by complainant, *held* manifestly against the weight of the evidence, such finding being made on the uncorroborated testimony of complainant, which was contradicted by defendant's evidence and impeached by evidence tending to show that complainant's reputation for truth and veracity was bad in the community where he resided.

9. PAYMENT, § 29*—*when purported receipt entitled to little weight as evidence of payment.* In a bill to compel the conveyance of land, where it appeared that defendant's predecessor in title to the land had taken title under an agreement to convey to complainant, on payment of certain sums of money, and where the payment of an item of $300 to the administrator of such predecessor was disputed, a paper reading: "John Henry to H. M. Britt, $300.00," held not a receipt and entitled to little weight, the paper being not signed, and there being no evidence of handwriting, or to show how complainant came by the paper other than his own testimony, and there being evidence that complainant owed H. M. Britt $300 on another transaction at the time when the payment was alleged to have been made, to which the paper might have referred.

10. PAYMENT, § 27*—*who has burden of proving payment.* One claiming to have made a payment has the burden of proving the payment by a preponderance of the evidence.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. MORTGAGES, § 720*—*when evidence sufficient to sustain finding that corn paid on indebtedness for land*. In a bill to compel the conveyance of land, where it appeared that defendant's predecessor in title to the land had taken title under an agreement to convey to complainant, on payment of certain sums of money, a finding that certain corn was paid on account of the sums due defendant's predecessor and not as rent, *held* sustained by the evidence.